**Elmer E. KOVACH, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 11476.**

United States Court of Appeals
Seventh Circuit.

Jan. 17, 1956.

---

Harry L. Browne, Raymond F. Beagle, Jr., Kansas City, Mo., and Spencer, Fane, Britt & Browne, Kansas City, Mo., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Elizabeth W. Weston, Attorney, N. L. R. B., Washington, D. C., Theophil C. Kammholz, General Counsel, David P. Findling, Associate General Counsel, John Francis Lawless, Attorneys, National Labor Relations Board, Washington, D. C., for respondent.

Donald Cronson, New York City, John H. Morse, New York City, Cravath, Swaine & Moore, New York City, for intervenor Studebaker Packard Corp.

Nathan Levy, South Bend, Ind., George N. Beamer, Joseph T. Helling, South Bend, Ind., Crumpacker, May, Beamer, Levy & Searer, South Bend, Ind., of counsel, for intervenor, Local No. 5, United Automobile, Aircraft and Agricultural Implement Workers of America, UAW–CIO.

Before MAJOR, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

Petitioner, Kovach, initiated this proceeding by filing a charge accusing both his former employer, Studebaker Corporation (hereafter referred to as Company), and his union, Local No. 5 UAW–CIO (hereafter referred to as Union), of unfair labor practices. The complaint which was filed in due course by the General Counsel, was dismissed by the Board. Kovach is here petitioning this court, pursuant to 29 U.S.C.A. § 160(f), to review the Board's decision. Both the Company and the Union are intervenors in this appeal. Since the Union has challenged the timeliness of the petition for review, we shall first direct our attention to that question.

The Board's final order was entered on December 10, 1954, and on April 13, 1955, four months later, the petitioner filed a motion for reconsideration with the Board. This motion was denied on May 17, 1955, and Kovach filed his petition for review on May 31, 1955. Thus, less than six months elapsed between the Board's final order and the petition for review, and during one month of that time the Board was holding petitioner's motion to reconsider.

Section 10(f) of the Labor Management Relations Act, 29 U.S.C.A. § 160(f) which gives an aggrieved party the right to petition a Court of Appeals for review of the Board's decision, does not fix a time limit within which such a petition may be filed. The Union argues that the sixty days allowed by the Federal Rules of Civil Procedure, 28 U.S.C.A., for appeals in cases in which the United States is a party should apply. In the alternative the Union insists that the right to file a petition for review should be limited to a *reasonable* time after the Board's final order. Kovach, on the other hand,

maintains that he has as much time to petition for review of the decision under § 10(f) as the Board has to petition for enforcement under § 10(e), and that the delay between the Board's decision and his petition for review was not unreasonable.

We do not think that the time limitation upon appeals in Rule 73 of the Federal Rules of Civil Procedure, 28 U.S.C.A., controls the time within which petitions to review a decision of the Labor Board may be filed. Strictly speaking a petition to review is not an appeal within the meaning of Rule 73. It is an independent statutory proceeding, initiated in the Court of Appeals, to review the order of the Board. A time limitation on the right to petition for such a review if fixed by statute would be in the nature of a statute of limitations or of a condition to the right. In Haas v. Overholser, D.C.Cir., 223 F.2d 314, where a former civil service employee brought suit in the District Court to set aside an administrative decision to terminate his employment, the Court of Appeals held that the former employee was guilty of *laches* because he had waited more than two years after termination of his employment.

The cases cited by Kovach involve petitions for enforcement by the Board, rather than petitions for review by an aggrieved person. It has been held that the Board may successfully petition for enforcement of an order two and one-half years after the order was entered. National Labor Relations Board v. Pool Mfg. Co., 339 U.S. 577, 70 S.Ct. 830, 94 L.Ed. 1077. One case cited by Kovach, however, intimates that a petition to review is subject to no more limitation than is a petition for enforcement. In National Labor Relations Board v. Central Dispensary & Emergency Hospital, 79 U.S.App.D.C. 274, 145 F.2d 852, 854, the court said:

"While the Board delayed over a year in bringing the case before us for enforcement, respondent cannot now take advantage of that fact because during the entire period it lay within its own power to seek relief."

It does not seem reasonable, however, that either § 10(f) or § 10(e) of the Act should be without any time limitation. The possibility that the Board's decision may be reversed on petition to review should not be allowed to keep the issues in an unsettled state indefinitely. And the respondent should, at some point in time, be able to assume that the Board has chosen not to enforce its order. Time is of course the major factor, but under the present Act the passage of time alone does not seem to be enough to cut off a party's rights. Time must cause or be accompanied by a change in position which would make it unfair to enforce rights that have been allowed to lie dormant. These principles are of course the foundation of the equitable doctrine of *laches*, and it seems to us that the use the courts have made of that doctrine is the proper answer in the situation confronting us. Each case should be viewed independently in the light of all its surrounding facts. The party raising the issue of timeliness should not only show that more time has elapsed than was reasonably necessary in the particular situation, but he should also show that during that time his opponent has gained some advantage he did not originally have or that he himself has been prejudiced by the delay in bringing the action.

The Union here has shown nothing but the passage of time, and it does not even appear that the 172 days that did elapse constituted an unreasonable amount of time. The petition for review was timely filed and we therefore may proceed to review the facts of the case and the Board's decision thereon.

There is no disagreement as to the basic facts. The controversy is over their interpretation and the effect of the law as applied to them. It has always been a general practice among the employees of the Studebaker Motorcar Company to drive Studebaker cars. Many employees thought that they should demonstrate their loyalty to the Company in

that way. In 1953, when automobile production caught up with demand, Studebaker was harder hit than most companies. Employees went on a "one-week-on-one-week-off" schedule, and there was widespread fear that the Company would not be able to continue its operations. During this period the employees became very anxious about the business of the Company and the traditional feeling that Studebaker employees should buy Studebaker cars was greatly accentuated.

Those who owned "off-brand" (*i. e.* other than Studebaker) cars were severely criticized. An attempt was made to have the Union adopt a rule that employees could drive only Studebakers. The President of the Union spoke out strongly against such a Union policy and the proposal was defeated. Groups of workers, however, began refusing to work with fellow employees who drove "off-brand" cars. In each case the employees in a certain department would stop work. When asked why, they would say that they were protesting against a particular employee (usually in that department) because he drove an "off-brand" car. They would say that as soon as the offending person would get rid of his "off-brand" car or would be removed from their department they would resume work. The foreman would then take the offending worker to the office of Mr. Beutlich, the Company's Assistant Director of Industrial Relations. Mr. Beutlich would say that as far as the Company was concerned its employees could buy whatever make of car they preferred, but that it could not afford a shutdown because of one man and that it would have to take the offending worker's badge until he could make peace with his fellow workers. Without a badge no one could enter the plant, so this action was in effect a layoff. Many of the employees so laid-off, including the petitioner, Kovach, have never returned to work at Studebaker.

On the basis of Kovach's charge the General Counsel filed a complaint citing the Company and the Union for unfair labor practices in connection with nineteen employees who had been laid-off because their fellow workers refused to work with them because they persisted in driving "off-brand" cars. Evidence on the complaint was heard by a Hearing Examiner who recommended that the complaint be dismissed. The Board, after reviewing the Hearing Examiner's report and the General Counsel's exceptions thereto, dismissed the complaint. The complaint charged the Company and the Union with unfair labor practices under several sections of the Act. We shall discuss the merits of these charges according to the section upon which they are based. But first we shall answer the Company's contention that the petitioner Kovach has no standing to petition for review of the Board's order.

Section 10(f) of the Act provides that

"Any person *aggrieved* by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order * * *." 29 U.S.C.A. § 160 (f). (Emphasis added.)

The Company's argument is that Kovach is not a "person aggrieved" because he is no longer an employee; and any change that the Company might have been forced to make would not have affected him; and that if the Board had found an unfair labor practice, he would not have an absolute right to back pay or reinstatement since the granting of those remedies would be within the discretion of the Board to be exercised according to what the Board thought necessary to carry out the purposes of the Act. Thus, the Company argues that Kovach is not aggrieved by the Board's decision because even if the Board had decided in his favor he might not have been in any better position than he was before. We think the fact that petitioner was the charging party plus the strong possibility that the Board in its discretion would have awarded the petitioner back pay or reinstated him in his job make him an aggrieved party.

The Company cites the case of Anthony v. National Labor Relations Board, 9 Cir., 132 F.2d 620, in support of its

argument that Kovach was not "an aggrieved party." This court expressed its disapproval of the Anthony case in Albrecht v. National Labor Relations Board, 7 Cir., 181 F.2d 652, pointing out the fact that it had not been followed by any other Courts of Appeals. We note that since the Anthony decision was handed down in 1942, it has not once been cited except with disapproval in the Albrecht case. We still choose not to follow the Anthony case.

■ The first substantive argument made by the petitioner is that the facts as found by the Hearing Examiner and accepted by the Board establish a violation by the Company of § 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1). The gist of the argument is that the employees' practice of buying Studebakers is a concerted activity for their "mutual aid or protection," and is therefore protected by § 7 of the Act, 29 U.S.C.A. § 157. The petitioner says that, this being true, the right of individuals to refrain from engaging in such concerted activity is also protected by § 7. Therefore petitioner insists that the Company laid off the nineteen employees because of action by those employees which was protected by § 7 and that § 8(a) (1) makes that an unfair labor practice on the part of the employer. Of course, the Company would not be excused of violations of the Act merely because it had been coerced by work stoppages by other employees. N. L. R. B. v. American Car & Foundry Co., 7 Cir., 161 F.2d 501; N. L. R. B. v. Goodyear Tire & Rubber Co., 5 Cir., 129 F.2d 661; Printz Leather Co., Inc., 94 N.L.R.B. 1312. The Board, however, does not argue the merits of an 8(a) (1) violation.

The only reply the Labor Board makes to Kovach's claim that there has been a violation of § 8(a) (1) is that the question cannot properly be brought before this court. The complaint alleged an independent violation of § 8(a) (1), and the Hearing Examiner found that the Company had not violated § 8(a) (1). However, the Board in its Decision and Order expressly refrained from deciding

that question. In Footnote 2 of its decision the Board said:

> "With respect to the Trial Examiner's finding that Section 8(a) (1) was not violated, the General Counsel excepted only on the ground that 'the (19 complaining) employees had the right under Section 7 to refrain from joining in *union* action' (italics added). As we have found above, there was no *union* policy or action to which the suspensions may be attributed."

The above statement is understood when viewed in connection with the Board's rule which provides:

> "No matter not included in a statement of exceptions may thereafter be urged before the Board or in any further proceedings." 29 C.F.R. § 102.46(b).

■■ No exception was filed to the Hearing Examiner's findings with regard to the alleged violation of § 8(a) (1) so the Board following its own rule did not consider that finding. We, in turn, may ordinarily consider only objections which have been urged before the Board.

> "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C.A. § 160 (e).

If we should hold that we will review matters raised before the Hearing Examiner, even though not considered by the Board, because the Examiner is an "agent" of the Board, we would virtually destroy § 102.46(b) of the Board's Rules. The Board could hardly continue to consider only those issues in the Intermediate Report to which formal exception is taken if the courts are going to review everything raised before the Hearing Examiner. The petitioner does not contest the propriety or constitutionality of the Board's rules, and it is not our function to question the internal

**144**

functions of an administrative body when not called upon by the parties to do so.

Four months after the Board's decision the Petitioner filed a motion to reconsider. In his motion he argued that certain parts of the General Counsel's Exceptions did relate to the finding as to the alleged independent violation of § 8(a) (1), and he asked the Board to overrule the Trial Examiner's conclusion and find that the Company had committed an unfair labor practice in violation of § 8(a) (1). The Board overruled the motion on two grounds: nothing new had been raised, and it was not timely. Petitioner now claims that the grounds given by the Board in overruling his motion show that the Board did originally consider the question of an independent violation of § 8(a) (1) because otherwise it *would* have been new material when raised in the motion. It is difficult to reconcile this argument with the Board's affirmative statement that it was not considering the possibility of an independent violation of § 8(a) (1).

The Board's order denying Petitioner's motion is not inconsistent with its original order dismissing the complaint. The Board's rule is that it will consider only issues raised in the Exceptions filed to the Intermediate Report. The motion to reconsider failed to show the Board anything in the statement of exceptions that it had not already considered.

The motion to reconsider cites the General Counsel's Exceptions 59 and 71 as those which bring the issue of an independent § 8(a) (1) violation before the Board. But an examination of these exceptions shows that, like the rest of the statement, they are addressed to the employee's right to refrain from taking part in "union action," and that § 8(a) (1) is mentioned only because under the facts of this case the Union is accused of an unfair labor practice under § 8(b) (1) (A) by coercing the Company to lay-off the Petitioner in violation of § 8(a) (1). This is demonstrated by the section of the Intermediate Report to which

Exception 71 is made. That part of the Report begins:

"Since there can be no Section 8 (b) (2) violation unless that which is caused or attempted is a violation of Section 8(a) (3), and no Section 8(b) (1) (A) violation unless the employee right claimed to have been trenched upon is also one safeguarded from employer interference by Section 8(a) (1), we shall consider first whether, independent of union causation, the Company's conduct was such as alone to be illegal under Section 8(a) (3) and 8(a) (1), and, if not, then whether what was lawful without union causation was made unlawful with it."

The difference between arguing a § 8 (a) (1) violation in order to show an unfair labor practice on the part of the Union under § 8(b) (1) (A), and arguing it as an independent unfair labor practice by the Company is graphically demonstrated here by the fact that the Board completely refuted the former by finding that there was no union action involved in this case. Of course, if the argument had been that the Company was guilty of an independent § 8(a) (1) violation the presence or absence of "union action" would be immaterial.

In summary: the statement of exceptions, including Exceptions 59 and 71, claimed only that the *Union* was guilty of an unfair labor practice under § 8(b) (1) (A) by coercing the Company to violate § 8(a) (1); and the Board completely answered this contention by determining that there was no Union action. Under its own rule (29 C.F.R. § 102.46), the Board was correct in refusing to decide any more. As we pointed out above, § 10(e) of the Act provides that this court may not review any objection to the Board's order which has not been urged before the Board unless the failure to urge the objection before the Board is excused because of extraordinary circumstances. No such circumstances have been brought to our attention.

The remaining argument that Petitioner makes is that the Union is guilty of an unfair labor practice under § 8(b) (2) by causing the Company to discriminate against him and other employees in violation of § 8(a) (3). Before the Board the petitioner also argued that the Union had violated § 8(b) (1) (A), but he has not renewed that argument before this court. The Board answered all of the petitioner's contentions by finding that " * * * the Union had no policy giving rise to a union obligation concerning the cars its members might or might not buy, and did not, in fact, cause, or attempt to cause, the suspensions or the work stoppages leading to the suspensions." We not only find ample evidence to support the Board's finding that the Union did not cause or try to cause the layoffs, but from the record as a whole we reach the same conclusion and further believe that this finding is a complete answer to the charge of a violation of § 8(b) (2).

The question of a Union rule on buying "off-brand" cars was raised at a Union meeting and defeated. At that time the President of the Union expressed his personal opinion that it was not proper for the Union to tell employees what kind of a car to drive. The work stoppages, when they did occur, were small, local and spontaneous. The employees not involved were not aware of what was happening. In most cases the striking workers themselves did not decide to stop work until shortly before they did so. The record as a whole leaves us with no doubt but that the work stoppages were spontaneous protests by individual employees against fellow workers who drove "off-brand" cars.

Section 8(b) (2) of the Act makes it an unfair labor practice for the union "to cause or attempt to cause an employer to discriminate against an employee" in violation of § 8(a) (3). The Board's finding, that the Union did not cause or try to cause the layoffs, is a finding that the Union did not violate § 8(b) (2). The section does not place upon the Union the duty of stopping a "wild-cat" strike by some of its members.

The no-strike agreement was between the Union and the Company and is not here material.

The Board properly dismissed the complaint.