**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SEARLE AUTO GLASS, INC., d/b/a Best Glass Company, Respondent.**

**SEARLE AUTO GLASS, INC., d/b/a Best Glass Company, Cross-Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Cross-Respondent.**

Nos. 84–7457, 84–7552.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1985.

Decided June 4, 1985.

Susan Williams, N.L.R.B., Washington, D.C., for petitioner.

Francis J. Morton, Las Vegas, Nev., for respondent.

Before PREGERSON and FERGUSON, Circuit Judges, and STEPHENS,* Senior District Judge.

PREGERSON, Circuit Judge.

The NLRB petitions for enforcement of its order finding that Searle Auto Glass, Inc. violated section 8(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 151–169 (1982), by firing an employee for filing a wage claim with the Nevada State Labor Commission. The Company cross-petitions, arguing that the Board's enforcement action is time-barred, and that the Board's decision reversing the ALJ's ruling was not supported by substantial evidence. Because we find the Board's order has support in the record, we affirm.

FACTS AND PROCEDURE

Searle Auto Glass, Inc. (the Company), doing business in Nevada as Best Glass Company, is in the business of wholesaling, retailing, and installing glass. It operates three stores in the greater Las Vegas area: the North Las Vegas store, the Commerce Street store, and the Main Street store. The Company is a member of a multi-employer association,[1] and is covered by a master labor agreement with the Floorcoverer, Glaziers & Allied Trades, Local Union No. 2001.

Bruce Haase, the alleged discriminatee, worked for the Company at four separate times: for two days during the summer of 1979, for one week in September 1979, from late November 1979 to February 14, 1980, and from June 9 to June 16, 1980. The circumstances surrounding the last two periods of employment are relevant to this appeal.

In August 1979, the Company's business manager, Bill Krummel, investigated the North Las Vegas store because of its failure to report any profits. He discovered a "skimming" operation by which employees reported less income than they actually received when they went out on calls. In an effort to correct the problem, Krummel terminated the bookkeeper. When losses continued, Krummel made another trip to the store on February 14, 1980. Walt Featherstone, the company president, accompanied him. Their investigation revealed the possibility that Haase was moonlighting in competition with the Company. Because of that possibility and because of additional problems with the store, Featherstone and Krummel terminated the entire crew and closed the store for inventory. The validity of those discharges is not disputed.

Following his termination Haase told Krummel that he believed he had not been paid a higher wage for days he performed jobs rated higher than his job classification, as required by the collective bargaining agreement. Krummel denied Haase's request on February 27, 1980, and on February 29, Haase filed a claim with the Nevada Labor Commission.[2] Two other employees, who had also been discharged from the North Las Vegas store on February 14, filed similar claims. The Commission notified the Company of all three claims shortly thereafter.

On June 9, 1980, when Krummel was out of town, the Union hiring hall referred Haase to the Company to fill in for a vacationing employee. One week later, on June 16, the shop foreman, Steven Pence, fired Haase pursuant to instructions from Krummel. On that same day Krummel sent a letter to the Union listing Haase as one of four employees who were not to be rehired.[3]

* Honorable Albert Lee Stephens, Senior United States District Judge, Sitting by Designation.

1. Searle is an employer within the meaning of sections 2(2), 6 and 7 of the Act, 29 U.S.C. §§ 152(2), 156, 157.

2. The Nevada Labor Commission eventually dismissed Haase's claim for lack of jurisdiction, referring him to the NLRB.

3. This procedure was allowed under the terms of the collective bargaining agreement. Two of the other individuals on the list, Richard Hartley and Warren Moore, had been employed with

Haase filed a claim for unemployment compensation with the Nevada Employment Security Department ("the NESD"). The NESD sent a form to the Company containing the question: "[e]xplain in detail why claimant was last separated from your employment or why you believe he should not be paid benefits." Krummel wrote the following response:

Claimant had previously worked for Best Glass Company; he was terminated on February 14, 1980, due to temporary closure of that facility. At that time, an unjustifiable claim to the Labor Commission was made by the claimant against Best Glass Company.

On June 20, 1980, Haase filed a claim of a section 8(a)(1) violation with the NLRB.

The ALJ dismissed Haase's complaint. On September 30, 1982, the NLRB reversed in a 2-1 decision, finding an 8(a)(1) violation. *Searle Auto Glass, Inc.*, 264 NLRB 1313 (1982). The Board issued a cease and desist order, and instructed that Haase be reinstated, that all references to the discharge be expunged from the Company's files, and that the Company post appropriate notices at its three stores. The NLRB petitioned for enforcement of the order under section 10(e), 29 U.S.C. § 160(e), on July 9, 1984.[4] The Company opposes the petition.

## DISCUSSION

The Company contests the Board's decision on two grounds. First, it argues that the NLRB's delay in seeking enforcement of its order should bar this action. Second, it contends that the decision was not supported by substantial evidence. We discuss each issue in turn.

### I. *Petition for Enforcement*

■ The Company argues that the NLRB should be barred from seeking enforcement of the Board's order which issued more than twenty-two months ago. It advances two grounds in support of this argument. First, the Company contends that the NLRB is barred because it entered into a stipulated dismissal of the first enforcement petition. This argument is without merit. The stipulated dismissal, approved April 29, 1983, was "without prejudice." Thus, the NLRB was within its legal rights in renewing the enforcement petition.

■ Second, the Company argues that the doctrine of laches should bar the renewal of the enforcement proceeding at this late date. There is no statutory time limit on the filing of applications for enforcement of Board orders. *See* section 10(e), 29 U.S.C. § 160(e). Because there is no statutory limit, we have held that the doctrine of laches applies in such cases. The party challenging the timeliness of a petition must show that more time has elapsed than reasonably necessary and that it was prejudiced by the delay. *Griffith Co. v. NLRB*, 545 F.2d 1194, 1197 n. 3 (9th Cir.1976), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 125 (1977); *see also Buchanan v. NLRB*, 597 F.2d 388, 392-93 (4th Cir.1979); *Kovach v. NLRB*, 229 F.2d 138, 141 (7th Cir.1956).

■ Although the stipulation itself does not disclose the reason for dismissing the action, the NLRB claims that it dismissed the original enforcement action pending Supreme Court decisions in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), and *NLRB v. City Disposal Systems Inc.*, — U.S. ——, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984), both of which are relevant to this action.[5] The NLRB filed the second

---

Haase at the North Las Vegas store, had been fired on February 14, and had filed claims with the Nevada Labor Commission. The last person on the list, Rick Marksberry, had a similar grievance with the Company, but apparently never filed a formal wage claim.

4. The NLRB had filed an earlier petition for enforcement on March 23, 1982. That petition

was dismissed without prejudice pursuant to stipulation of the parties.

5. The Board's *Interboro* doctrine, involved in *City Disposal*, was relevant to determining whether Haase's action in filing the wage claim was a protected, concerted activity within the meaning of section 7, 29 U.S.C. § 157. *Interboro Contractors, Inc.*, 157 N.L.R.B. 1295, 1298

enforcement action promptly in July 1984, just a few months after the Supreme Court decided *City Disposal* in March 1984.

Because both Supreme Court decisions were involved in this case, it was reasonable for the NLRB to wait for the results in those cases before proceeding. The five month delay between the decision in *City Disposal* and the filing of the second enforcement action was not unduly long. *See NLRB v. Pool Manufacturing Co.*, 339 U.S. 577, 580, 70 S.Ct. 830, 832, 94 L.Ed. 1077 (1950) (two-and-a-half years not an unreasonable delay); *Buchanan*, 597 F.2d at 393 (10 month delay not unreasonable where it did not result in any prejudice to other party); *Kovach*, 229 F.2d at 141 (six month delay reasonable). This conclusion is strengthened by the fact that the Company was not prejudiced by the delay. The burden of proof that both the ALJ and the Board applied was the same burden that the Supreme Court approved in *Transportation Management*. Thus, by its delay, the NLRB did not gain any advantage it did not originally have, and the Company suffered no prejudice.

Having determined that this action is properly before us, we turn to the merits of the case.

## II. *Substantiality of Evidence*

█ We will enforce the Board's order if its findings of fact are supported by substantial evidence on the record viewed as a whole. 29 U.S.C. § 160(f); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Royal Development Co. v. NLRB*, 703 F.2d 363, 366 (9th Cir.1983). This standard does not change when the Board and the ALJ make contrary findings; the deference accorded fact findings runs in favor of the Board. We still consider the ALJ's findings as part of the record, however, and weigh them along with other opposing evidence, against the evidence supporting the

Board's decision. *Idaho Falls Consolidated Hospitals, Inc. v. NLRB*, 731 F.2d 1384, 1386 (9th Cir.1984); *NLRB v. Brooks Cameras, Inc.*, 691 F.2d 912, 915 (9th Cir.1982).

█ We will give weight to the ALJ's determinations of credibility because the ALJ "sees the witnesses and hears them testify." *Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1078 (9th Cir.1977) (quoting *NLRB v. Walton Manufacturing Co.*, 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962)); *see also NLRB v. Brooks Cameras*, 691 F.2d at 915. But where the central issue is, as here, the employer's motive in discharging an employee, we "must be mindful that the determination of motive is particularly within the purview of the NLRB." *Lippincott Industries, Inc. v. NLRB*, 661 F.2d 112, 116 (9th Cir.1981).

█ When an employee's discharge is motivated both by legitimate business reasons and by reasons related to the employee's exercise of protected activities, we will find an unfair labor practice only if the employee's exercise of a protected activity was a substantial or a motivating factor in the discharge. *NLRB v. Brooks Cameras*, 691 F.2d at 915, *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 400–01, 103 S.Ct. 2469, 2473–74, 76 L.Ed.2d 667 (1983). In *Transportation Management* the Supreme Court approved the NLRB's allocation of the burden of proof in an unfair labor practice discharge case. The General Counsel bears the burden of proving that the employee's exercise of a protected activity was a motivating factor in the decision to discharge. This burden never shifts, but as an affirmative defense the employer may show by a preponderance of the evidence that the employee would have been terminated even in the absence of the protected conduct. *Id.* at 394–95, 404, 103 S.Ct. at 2470–71, 2475.

(1966), *enforced,* 388 F.2d 495 (2d Cir.1967). The Board's *Wright Line* doctrine, involved in *Transportation Management,* was relevant to the allocation of the proper burden of proof in cases such as this one where both discriminato-

ry and valid reasons for discharge are advanced. *Wright Line,* 251 N.R.R.B. 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

■ Both the ALJ and the Board treated Krummel's statement on the NESD form as constituting a prima facie case of unlawful motivation for Haase's discharge.[6] The Board found that Haase had filed a claim with the Labor Commission, that the Company knew of the action at the time of the second discharge, and that the response on the NESD form established that the filing of the Labor Commission's claim was a motivating factor in the decision to discharge. The sole remaining question is whether the Company put forth sufficient evidence to show that Haase would have been discharged even in the absence of his wage claim. Based upon the findings of the Board, we hold that substantial evidence supports the Board's conclusion that the discharge was unlawful.

■ The Company contends that it had ample reason to discharge Haase in February: the store was in the red, Haase was part of the "existent group" at the store (the store employees had formerly been suspected of skimming), and Krummel and Featherstone suspected him of moonlighting in competition with the Company. The Company argues that the same reasons it suspected Haase in February justified his discharge in June. It further points out that the ALJ was the only person to observe Krummel testifying, and that this court should give weight to the fact that the ALJ believed Krummel's testimony.

The Board need not treat self-serving declarations of an employer as conclusive, even if not contradicted by any direct testimony in the record. *NLRB v. Pacific Grinding Wheel Co., Inc.*, 572 F.2d 1343, 1347 (9th Cir.1978). In this case the Board held that Krummel's asserted defense was a pretext designed to disguise his real reason for discharging Haase. It pointed to numerous facts in support of this conclusion. First, Krummel never mentioned the ulterior reason for the February discharge at the time he closed the North Las Vegas store. When the Company was given an opportunity to mention its suspicions of Haase on the NESD form, it failed to set forth the many "legitimate" reasons it had for discharge, and instead mentioned only the "unjustifiable" wage claim. It was not until the hearing before the ALJ that Krummel first set forth a variety of business reasons for firing Haase.

Second, in his testimony before the ALJ, Krummel indicated that he suspected Haase was involved in the skimming that had been going on at the store, yet Haase was not even employed full-time at the North Las Vegas store until November 1979, long after Krummel had discovered the purported skimming at the store and fired the bookkeeper. In addition, at least one employee who had worked at the North Las Vegas store during the period of skimming, but who had been transferred to another store at the time of the February 14 discharge, remained an employee of the Company despite possible implication in "skimming."

Finally, when the Company forwarded the "non-rehirable" list to the Union on the day of Haase's second discharge, the only other employees on the list were those who had wage claims against the Company. The non-rehirable list itself was not prepared at the time of the initial February 14 termination though Krummel allegedly suspected wrongdoing then. Instead, the list was not prepared until the Company knew of the wage claims of all the employees on the list.

The Board was convinced that Krummel's response on the NESD form, filed within 10 days of the discharge, was more likely to be true than his oral statements

---

6. The Company concedes that Haase's conduct in filing a wage claim with the Nevada Labor Commission was a protected, concerted activity within the meaning of sections 7 and 8(a)(1) of the Act, 29 U.S.C. §§ 157, 158(a)(1). Haase asserted the right to receive a higher rate of pay on days he worked in a higher paid classification, a right allegedly given him under Article 26, section 7(B) of the collective bargaining agreement. *See NLRB v. City Disposal Systems, Inc.*, — U.S. —, 104 S.Ct. 1505, 1516, 79 L.Ed.2d 839 (1984) (approving the NLRB's *Interboro* doctrine that an individual employee's reasonable and honest invocation of a right provided for in his collective bargaining agreement constitutes a "concerted activity.").

some months later. There is substantial evidence to support the Board's conclusion that Haase was discharged in violation of section 8(a)(1). Accordingly, the Board's order is ENFORCED.