The JOHN KLANN MOVING AND TRUCKING COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 18670.

United States Court of Appeals Sixth Circuit.

May 9, 1969.

Bernard S. Goldfarb, Cleveland, Ohio, for petitioner.

Fred R. Kimmel, N.L.R.B., Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Fred R. Kimmel, Attys., N.L.R.B., Washington, D. C., on brief.

Before WEICK, Chief Judge, and PHILLIPS and COMBS, Circuit Judges.

COMBS, Circuit Judge.

This case is before us on the John Klann Moving and Trucking Company's petition for review of an order of the National Labor Relations Board. The Board requests enforcement. The company was found in violation of Section 8 (a) (1) of the Act by discharging employee Leo Halada for engaging in protected activity. The Board's decision and order are reported at 170 N.L.R.B. No. 133.

Petitioner's employees, including Leo Halada, were represented by the Truck Drivers Union, Local 407 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The collective bargaining agreement contained a procedure for the settlement of grievances. Under the contract, grievances were first considered at a local level and, if not resolved, then were heard by a permanent grievance committee composed of three company and three union representatives. The committee could dispose of the grievance by majority vote.

Halada was an employee of eleven years' standing with a good work record. In April, 1964, he first used the grievance machinery to register a complaint against petitioner, charging that the company was not complying with the overtime and vacation pay provisions of the contract. Company president Charles Woidke responded by calling a meeting of the drivers who would be affected by the resolution of Halada's grievance. Woidke told the men that the company could not afford literal compliance with the contract, and, if it was enforced, they would have to lay over at various places at night instead of completing their runs on the same work day. A vote was then taken, and only Halada voted for adherence to the contract.

Soon thereafter, Halada was taken off his regular run and he filed a grievance on this. In November, 1964, he filed three more grievances, all relating to his seniority and the general prerequisites of seniority. At least two of these grievances were remedied. About this same time, Halada was assigned overnight trips without receiving the customary advance notice. On his complaint to the union, the overnight trips ceased.

During the following months, Halada frequently complained to union officials that the company was not complying with the overtime or vacation pay provisions of the contract. In April, 1965, he filed another grievance on these items.

President Woidke called another meeting of the drivers at which he referred to Halada as "our trouble-making friend." Woidke repeated his previous statement about overnight lay-overs if the contract was adhered to, and again the drivers expressed satisfaction with the existing arrangement.

In early 1966, Halada again complained to the union about the overtime and vacation pay issues. Then in March, 1966, Halada and another employee were summoned to a private meeting with Woidke. As a result of this meeting an understanding was reached that Halada would be paid at the contract rate for vacations and that he would make short, local runs most of the time. After this agreement, Halada received time and one-half for overtime on his occasional long distance runs. However, in June, 1966, he filed another grievance, complaining that he had not received all the overtime pay due him.

The company posted its vacation schedule in June, 1966. When Halada saw that he was listed for a three-week vacation, he complained to Woidke that he was entitled to eighteen work days. According to Halada, Woidke agreed that he should have as vacation eighteen work days plus two additional days. Halada went on vacation in July and before his return received a notice from Woidke that he had overstayed his vacation by three days and that he was fired. He then filed a grievance about being fired.

The permanent grievance committee heard Halada's last two grievances, one about overtime and one about being fired, on the same day. The committee first considered the overtime claim and found for Halada. On the discharge grievance, it was found that Halada had overstayed his vacation and that the company had the right under the contract to fire him.

Shortly after the committee upheld Halada's discharge, Woidke was talking to several men at a local bar. When Halada's name was mentioned, Woidke, placing his hand to his forehead, said he

had had it "up to here" with Halada and that, "He cost me a little money, but I finally got him."

An unfair labor practice charge was filed. The Board found that the grievance committee looked only to the contractual basis for Halada's discharge and had not considered the company's motive. Turning to this question, it found that the vacation issue had been only a pretext and that the real reason for the discharge was Halada's militance in pressing grievances.

Only two questions are presented on appeal: (1) are the Board's findings supported by substantial evidence, and (2) was the Board permitted to look beyond the determination of the grievance committee.

Clearly, the Board's finding that Halada was fired for pressing grievances is supported in the record. The evidence, as outlined above, not only permits but strongly suggests the inference that Halada's extended vacation was merely a pretext for discharging him. Overstaying his vacation may well have been a legitimate reason to discharge Halada, as the grievance committee found, but the existence of a proper reason for a discharge is no defense if the discharge was actually made for an improper purpose. N.L.R.B. v. Challenge-Cook Bros., 374 F.2d 147 (6th Cir. 1967).

It is equally clear that the Board is not bound by the decision of the grievance committee. Section 10(a) of the Act provides, inter alia, that the Board's power to prevent unfair labor practices "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise."

The Board has chosen, in its discretion, to defer to arbitration where certain criteria are met. These criteria require that all parties agree to be bound by the arbitration, that the proceedings be fair and regular, and that the award not be repugnant to the policies of the Act. Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); N.L.R.B. v. Auburn Rubber Co., 384 F.2d 1 (10th Cir. 1967); Ramsey v. N.L.R.B., 327 F.2d 784 (7th Cir. 1964), cert. denied, 377 U. S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (1964); Spielberg Mfg. Co., 112 N.L.R. B. 1080 (1955).

Without specifically applying the above criteria, it would also appear that the Board may look behind an arbitrator's award where the arbitrator did not consider the specific factor which results in the unfair labor practice. Hawkins v. N.L.R.B., 358 F.2d 281 (7th Cir. 1966). See also Illinois Ruan Transport Corporation v. N.L.R.B., 404 F.2d 274 (8th Cir. 1968). That is precisely the situation presented here. The question of motive was not raised before the grievance committee and it made no finding on this point. Thus, the Board had the right to make its own finding on this issue.

Enforcement granted.