[S.F. No. 23831. May 24, 1979.]

TEX-CAL LAND MANAGEMENT, INC., Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

336

338

## COUNSEL

Seyfarth, Shaw, Fairweather & Geralson, Joseph Herman, George Preonas, Bette Bardeen, Karen Garver, Keith A. Hunsaker, Jr., and Stacy D. Shartin for Petitioner.

Ronald A. Zumbrun and Robert K. Best as Amici Curiae on behalf of Petitioner.

Harry J. Delizonna, Dennis Sullivan, Marvin J. Brenner, Manuel M. Medeiros, Marian Kennedy, Edwin F. Lowry, Thomas M. Sobel and Gary Williams for Respondent.

Jerome Cohen, Sanford N. Nathan, Tom Dalzell, Deborah Wiener Peyton, W. Daniel Boone, Glenn Rothner, E. Michael Heumann II, Linton Joaquin, Dianna Lyons and Kirsten Zerger for Real Party in Interest.

## OPINION

**NEWMAN, J.**—The Agricultural Labor Relations Act (ALRA), Labor Code section 1140 et seq.,[1] provides for direct judicial review by the Court of Appeal of certain orders of the Agricultural Labor Relations Board (ALRB). It states that in such review, "The findings of the board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall . . . be conclusive." (§ 1160.8.)[2]

---

[1]All section references are to the Labor Code, unless otherwise indicated, except that section 1094.5 is in the Code of Civil Procedure.

[2]Section 1160.8 states: "Any person aggrieved by the final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the court of appeal having jurisdiction over the county wherein the unfair labor practice in question was alleged to have been engaged in, or wherein such person resides or transacts business, by filing in such court a written petition requesting that the order of the board be modified or set aside. Such petition shall be filed with the court within 30 days from the date of the issuance of the board's order. Upon the filing of such petition, the court shall cause notice to be served upon the board and thereupon shall have jurisdiction of the proceeding. The board shall file in the court the record of the proceeding, certified by the board within 10 days after the clerk's notice unless such time is extended by the court for good cause shown. The court shall have jurisdiction to grant to the board such temporary relief or restraining order it deems just and proper and in like manner to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the board. The findings of the board with respect to

A petition to the Court of Appeal, Fifth District, for review of a board order against Tex-Cal Land Management, Inc. has drawn into question section 1160.8's construction, constitutionality, and proper application to the review sought. Because of the importance of those issues we granted a hearing after the Court of Appeal sustained the board's order (with minor modifications).

In its order the board found Tex-Cal guilty of unfair labor practices prohibited by section 1153 and accordingly imposed remedial measures under section 1160.3.[3] Tex-Cal claims a lack of evidentiary support for the board's findings that Tex-Cal violated *first,* subdivision (c) of section 1153 by selecting certain workers for seasonal layoff in order to discourage membership in the United Farm Workers (UFW) and, *second,* subdivision (a) of that section by molesting UFW organizers who were on Tex-Cal's premises as permitted by the board's access rules (Cal. Admin. Code, tit. 8, §§ 20900-20901, pp. 1051-1054.1; 1054; see *Agricultural*

questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

"An order directing an election shall not be stayed pending review, but such order may be reviewed as provided in Section 1158.

"If the time for review of the board order has lapsed, and the person has not voluntarily complied with the board's order, the board may apply to the superior court in any county in which the unfair labor practice occurred or wherein such person resides or transacts business for enforcement of its order. If after hearing, the court determines that the order was issued pursuant to procedures established by the board and that the person refuses to comply with the order, the court shall enforce such order by writ of injunction or other proper process. The court shall not review the merits of the order."

[3]Section 1160.3 provides in pertinent part: ". . . If, upon the preponderance of the testimony taken, the board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, the board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, to take affirmative action, including reinstatement of employees with or without backpay, and making employees whole, when the board deems such relief appropriate, for the loss of pay resulting from the employer's refusal to bargain, and to provide such other relief as will effectuate the policies of this part. Where an order directs reinstatement of an employee, backpay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. If, upon the preponderance of the testimony taken, the board shall be of the opinion that the person named in the complaint has not engaged in or is not engaging in any unfair labor practice, the board shall state its findings of fact and shall issue an order dismissing the complaint. No order of the board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any backpay, if such individual was suspended or discharged for cause. . . ."

*Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 400 [128 Cal.Rptr. 183, 546 P.2d 687].)[4]

Tex-Cal contends that, despite section 1160.8's direction to sustain board findings supported by substantial evidence, the California Constitution's restrictions on judicial power require courts to reject the findings unless, after an independent review of the record, they are ruled to be supported by the weight of the evidence. We must (1) decide on the proper standard of review, (2) determine in light of that standard the nature and constitutionality of section 1160.8's provision for initial review of board orders by an appellate rather than a superior court, and (3) if initial appellate review is constitutional, apply the proper standard in determining the validity of the board's order here.

The proceedings began with a complaint issued by the board based on UFW charges that Tex-Cal in 1975 illegally laid off employees and refused access to UFW organizers. A hearing was held in December 1975 before an administrative law officer who on February 11, 1976, issued findings, conclusions and recommendations. A transcript of the hearing, together with exceptions and briefs of Tex-Cal and the board's general counsel, was then submitted to a three-member panel of the board (see § 1146) that on February 15, 1977, issued the order now sought to be reviewed.

On March 17, 1977, Tex-Cal filed its petition with the Court of Appeal requesting review of the February 15th order under section 1160.8. The record of all the administrative proceedings was filed with the court; and, pursuant to court orders, briefs were submitted by Tex-Cal, the board's general counsel, and the UFW;[5] and the case was orally argued. The court affirmed the order (with modification) and directed its enforcement.

1. *Does the California Constitution preclude giving effect to a legislatively mandated "substantial evidence" standard for reviewing decisions of a statewide agency on which the Constitution does not confer judicial power?*

---

[4]The pertinent parts of section 1153 state: "It shall be an unfair labor practice for an agricultural employer to do any of the following: (a) To interfere with, restrain, or coerce agricultural employees in the exercise of the rights guaranteed in Section 1152. . . . (c) By discrimination in regard to the hiring or tenure of employment, or any term or condition of employment, to encourage or discourage membership in any labor organization. . . ."

[5]The UFW did not appear at the board hearing though its charges were the basis of the complaint. Its standing to appear now is not questioned by Tex-Cal or the ALRB.

Tex-Cal's attack on section 1160.8's command that findings be conclu-sive "if supported by substantial evidence on the record considered as a whole" is based on California cases that first preceded and later construed Code of Civil Procedure section 1094.5, enacted in 1945. The earliest case, *Standard Oil Co.* v. *State Board of Equal.* (1936) 6 Cal.2d 557, 559 [59 P.2d 119], held that certiorari was not available to review orders of a statewide agency on which the California Constitution neither conferred nor authorized a legislative conferral of judicial power. Such orders were then held unreviewable by prohibition (*Whitten* v. *California State Board of Optometry* (1937) 8 Cal.2d 444 [65 P.2d 1296, 115 A.L.R. 1]) but reviewable by mandate (*Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 82 [87 P.2d 848]). *Drummey* ruled that, in a mandate proceeding to review suspension of a vocational license, courts must independently determine the weight of the evidence. Why? Because to give finality to a licensing agency's findings on conflicting evidence would, the court declared, permit the agency to exercise judicial power in violation of the Constitution. (*Id.,* at p. 84.)

In *McDonough* v. *Goodcell* (1939) 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205], *Drummey*'s holding was ruled not to apply to the denial of an application for a license; there the test was held to be whether evidence supporting the denial would be sufficient on appeal to sustain similar findings in a court trial. (*Id.,* at p. 749.) *McDonough* pronounced that, in *Drummey,* licenses ordered suspended were "valuable property rights" that gave rise to a requirement of judicial weighing of the evidence because the suspension, if unlawful, would deprive the licensee of a right without due process of law. (*Id.,* at pp. 752-753.)

To clarify the procedures for review of administrative orders based on evidentiary hearings the Legislature in 1945 enacted section 1094.5 of the Code of Civil Procedure, subdivision (c) of which provides: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." The statute does not specify which cases are reviewable under the "weight of the evidence" and the "substantial evidence" standards but has been construed as continuing the *Drummey-McDonough* distinction. ■ Thus, independent judgment as to weight

of the evidence is required where a "vested" right is at stake; substantial evidence review is sufficient where the right is not vested. (See, e.g., *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 914-915 [80 Cal.Rptr. 89, 458 P.2d 33].)

*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242], declared that entitlement to independent judgment review requires that there be at stake a right which, in addition to being "vested," is "fundamental"—based "not alone [on] the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." Recent opinions have extended that rule to local and private agencies reviewable under section 1094.5 that have no judicial power under article VI, section 1 or any other clause of the Constitution. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29] (county retirement board); *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162] (private hospital).)

In *Bixby,* 4 Cal.3d 130, 151, a dissenting opinion called for adoption of uniform substantial evidence review under section 1094.5. The majority opinion expressed two reasons for rejecting the dissent. First it pointed out that section 1094.5 was intended to leave to courts the establishment of standards for deciding which cases require independent judgment and which substantial evidence review. ("In view of this judicial history, the court would now assert a doubtful prerogative if it were to rule that no cases at all require an independent judgment review, and that the Legislature created an empty category in section 1094.5.") (4 Cal.3d 130, 140.) Second, the majority opinion urged that independent judgment review be retained because it may help cure due process violations at the administrative level. (*Id.,* at p. 140, fn. 6.)

Those two reasons for rejecting the dissent imply that a statute might pass constitutional muster if it were to (1) provide for judicial review of fact findings only by the standard whether they are supported by substantial evidence in the light of the whole record, and (2) guarantee administrative due process. The words of section 1160.8, now before us, fulfill both those qualifications: they state that findings are conclusive "if supported by substantial evidence on the record considered as a whole"; and they are part of a statute, the ALRA, which generally assures the essentials of due process.

Unlike section 1094.5, which arose out of and perpetuated a state of judicially created uncertainty as to which of two standards apply in a particular case, section 1160.8 provides a single standard, apparently identical to that which since 1947 has appeared in sections 10(e) and 10(f) of the National Labor Relations Act (29 U.S.C. §§ 160(e) and 160(f)), the models for section 1160.8. ■ Indeed the entire ALRA is designed to provide agricultural workers with protection of their collective bargaining rights comparable to that provided nonagricultural workers by the NLRA. To that end the ALRA was patterned after the NLRA, with changes necessary to meet special needs of California agriculture. (See *Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 556 [147 Cal.Rptr. 165, 580 P.2d 665].) The ALRA incorporates procedural safeguards of the NLRA including the separation of prosecutorial from adjudicatory functions (§ 1149; cf. 29 U.S.C. § 153(d)), notice, written pleadings, evidentiary hearings (§ 1160.2; cf. 29 U.S.C. § 160(b)), and a requirement that orders be accompanied by findings based on the preponderance of the reported evidence (§ 1160.3; cf. 29 U.S.C. § 160(c)). To make full use of the board's expertise and to minimize delay from judicial review, both the ALRA and the NLRA provide for direct review of board orders by appellate courts and require that findings be conclusive if supported by substantial evidence on the record as a whole. (§ 1160.8; cf. 29 U.S.C. §§ 160(e), 160(f).)

The Legislature thus intended to adapt to California needs the proved federal instrumentality for protecting rights of employees and employers with respect to collective bargaining. (See Levy, *The Agricultural Labor Relations Act of 1975—La Esperanza de California Para El Futuro* (1975) 15 Santa Clara Law. 783.)

None of the cases that commenced in 1936 with *Standard Oil, supra,* 6 Cal.2d 557, and continued through *Bixby, supra,* 4 Cal.3d 130, as well as later cases, invalidated any legislative command that findings be conclusive if supported by substantial evidence. The language in those cases that described constitutional limitations on legislative power was unnecessary to the holdings, which could as well have been grounded in judicially fashioned rules of procedure or in interpretation of section 1094.5. In the present case, however, Tex-Cal asks us to invoke those cases' statements of constitutional doctrine for the first time to invalidate a deliberate legislative choice of the substantial evidence standard.

■ There are good reasons for our declining to do that—particularly where, as here, the ALRA review standard is an integral part of a statutory scheme that contains ample safeguards of fair procedure at the administrative level. (See *Bixby, supra,* 4 Cal.3d at p. 159 (dis. opn.); 4 Davis, Administrative Law Treatise (1958) § 29.09, pp. 166-167.) For us to create a new constitutional restriction would frustrate the Legislature's intent that the ALRB serve as "one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 488 [95 L.Ed. 456, 467, 71 S.Ct. 456].)[6] Moreover, imposition on section 1160.8 of rules that now govern section 1094.5, subdivision (c) would cause the standard for reviewing an unfair labor practice order to vary according to whether the order did or did not deprive the aggrieved party of "a fundamental vested right." The possible variety of orders, which range from simple restraint against minor interference with union activities to requirements of reinstatement and payment of back wages, would make the distinction "on a case-by-case basis" (*Bixby, supra,* 4 Cal.3d at p. 144) a prolific source of the litigious delay that the Legislature indisputably sought to avoid. (See *United Farm Workers* v. *Superior Court* (1977) 72 Cal.App.3d 268, 272 [140 Cal.Rptr. 87].)

We therefore hold that the Legislature may accord finality to the findings of a statewide agency that are supported by substantial evidence on the record considered as a whole and are made under safeguards equivalent to those provided by the ALRA for unfair labor practice proceedings, whether or not the California Constitution provides for that agency's exercising "judicial power." Our holding does not, of course, affect review of administrative findings where the Legislature has left the choice of standard to the courts (e.g., as in § 1094.5). We need not now consider standards applicable to the findings of local or private agencies.

---

[6]See Gardner & Greenberger, *Judicial Review of Administrative Action and Responsible Government* (1974) 63 Geo.L.J. 7, 36: "The fact remains that men of ordinary ability who have spent some time, in the case of agency heads and members, or many years, in the case of the staff, dealing with specialized issues do have a special competence in their fields. In unnoticed accretions prior proceedings, luncheon conversations, the daily press, and countless other sources add to their knowledge and understanding. As a rule, we consider their judgment likely to be better than that of the most brilliant of judges, confined as the judge is to the accidents of a single record and perhaps influenced by the skill or the ineptitude of the accidentally chosen counsel. As a rule, the confusion and delays of cross-examination are more likely to be of comfort to the reviewing court than they are to be of real aid to men already familiar, personally or through their staffs, with the issues."

2. *What jurisdiction over ALRB orders is given courts of appeal by the California Constitution and section 1160.8?*

The Legislature may not give to courts a jurisdiction beyond that conferred or authorized by the Constitution. (*Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 729-731 [192 P.2d 916].)

Section 1160.8 provides that courts of appeal have jurisdiction to review ALRB orders and "to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the board." The Constitution gives courts of appeal "original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition" (art. VI, § 10) and "appellate jurisdiction when superior courts have original jurisdiction and in other causes prescribed by statute" (art. VI, § 11). The jurisdiction conferred by section 1160.8 is subject to those limitations.

The judicial functions articulated in section 1160.8 do not readily fit the molds of either original jurisdiction to grant extraordinary relief or appellate jurisdiction because the section is patterned after sections 10(e) and 10(f) of the NLRA (29 U.S.C. § 160(e), (f)), which created "an independent statutory proceeding, initiated in the [federal] Court of Appeals" (*Kovach v. National Labor Relations Board* (7th Cir. 1956) 229 F.2d 138, 141). Section 10(e) empowers the NLRB to petition a federal appellate court for enforcement of its order. When the board files the record of its proceedings the court acquires jurisdiction described in language identical to that just quoted from ALRA section 1160.8.[7] The court is required to hear and consider objections from the party against whom the order is directed (*Ford Motor Co. v. Labor Board* (1939) 305 U.S. 364, 370 [83 L.Ed. 221, 228, 59 S.Ct. 301]) and to enforce the order if it concludes the board acted properly (*Labor Board v. Warren Co.* (1955) 350 U.S. 107, 112 [100 L.Ed. 96, 101, 76 S.Ct. 185]).

[7]Section 10(e) (29 U.S.C. § 160(e)) states: "The Board shall have power to petition any courts of appeals of the United States . . . within any circuit . . . wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board. . . ."

An alternate manner of initiating a court proceeding is provided by NLRA section 10(f), again in the words of ALRA section 1160.8: "Any person aggrieved by the final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order" in the appropriate appellate court "by filing in such court a written petition requesting that the order of the board be modified or set aside." After filing the petitioner must forward to the court the record of the NLRB proceedings, and the court proceeds as in the case of an NLRB petition filed under section 10(e).[8]

The Federal Rules of Appellate Procedure treat review of an NLRB order as neither an ordinary appeal nor an application for an extraordinary writ. The proceeding is commenced by filing a statement that the aggrieved party "hereby petitions the court for review of" an order. (Rule 15(a); appen., form 3.) Ordinary appeals, contrastingly, are brought by filing a notice in the trial court (rules 3 and 4); and applications to an appellate court for writs must contain statements of fact, issues, the relief sought, and reasons why the writ should be granted, along with pertinent parts of the record. (Rules 21(a) and (c).) Further, the court may summarily deny an application for extraordinary relief (rule 21), whereas a petition for review of an NLRB order, once the petitioner files the record, triggers briefing, oral argument, and decision. (Rule 20.)

We come now to the matter of harmonizing section 1160.8 with the limitations imposed on court of appeal jurisdiction by article VI, sections 10 and 11 of the Constitution. The question of jurisdiction to *review* orders presents different problems from that of jurisdiction to *enforce* orders; so we consider review and enforcement separately.

The absence from the federal scheme of judicial discretion to deny a petition for review without full consideration of the merits suggests the

---

[8]ALRA section 1160.8 differs from NLRA section 10(e) and (f) in that, under section 1160.8, the record is filed by the board in response to a notice from the court of the filing of the petition. The board then has 10 days, unless extended, to file the record. Another difference is in the handling of uncontested orders. Under the NLRA, if the board seeks enforcement under section 10(e) and the person against whom the order is directed does not file an answer within 20 days, "judgment will be awarded for the relief prayed." (Fed. Rules of App. Proc., rule 15(b).) Under section 1160.8, however, a proceeding in the Court of Appeal can be commenced not by the board but only by an aggrieved party within 30 days after issuance of the board's order. If the time for review has lapsed, the board may apply to the *superior* court, which must enforce the order *without reviewing the merits* if it determines that the order was issued pursuant to established board procedures and there is a refusal to comply.

possibility that section 1160.8 review also is a matter of right and, thus, an exercise of appellate jurisdiction in one of many "causes prescribed by statute" (art. VI, § 11). Before 1966 the Constitution gave this court and the then district courts of appeal jurisdiction in appeals from the superior courts and, insofar as provided by law municipal and justice courts. (Art. VI, former §§ 4, 4(b), 4(e).) The Legislature was held without power to extend the jurisdiction to appeals from decisions of entities other than courts. (*Collier & Wallis, Ltd.* v. *Astor* (1937) 9 Cal.2d 202, 204 [70 P.2d 171]; *Chinn* v. *Superior Court* (1909) 156 Cal. 478 [105 P. 580].) It is arguable that article VI, section 11, which since 1966 has given courts of appeal jurisdiction "in other causes prescribed by statute," now permits the Legislature to extend jurisdiction to appeals from orders of administrative agencies that formally adjudicate disputes. Section 1160.8 does not provide for an "appeal," however, or for a commencement of review by filing any notice of appeal with the ALRB. Instead it states that review is obtainable by filing with the court a "petition requesting that the order of the board be modified or set aside." That language more appropriately describes a petition for extraordinary relief than an appeal.

Article VI, section 10, however, gives courts of appeal "original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition." The Code of Civil Procedure, calling certiorari a "writ of review" (§ 1067), provides it may be issued when an inferior tribunal, board or officer exercising judicial functions has exceeded jurisdiction and there is no appeal or other adequate remedy (§ 1068). The Legislature has designated the writ as the method for review by appellate courts of decisions of the Public Utilities Commission (Cal. Const., art. XII, § 5; Pub. Util. Code, §§ 1756, 1758), Workers' Compensation Appeals Board (Cal. Const., art. XIV, § 4; Lab. Code, §§ 5950-5956), and Alcoholic Beverage Control Appeals Board (art. XX, § 22; Bus. & Prof. Code, §§ 23090-23090.7). With respect to two of those agencies we have sustained statutes requiring the appellate court to apply to the findings the exact standard prescribed by section 1160.8 for review of ALRB findings: whether in light of the entire record the findings are supported by substantial evidence. (*Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433, 436 [102 Cal.Rptr. 857, 498 P.2d 1105]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) Moreover, section 1160.8's provision that as soon as the petition is filed the court must notify the ALRB which, in response, must file its certified record is analogous to the writ of review, which commands the inferior tribunal "to certify fully to the court issuing

the writ . . . a transcript of the record and proceedings . . . and . . . to desist from further proceedings in the matter . . . ." (Code Civ. Proc., § 1071.)

Is the writ of review available only as to orders made in the exercise of "judicial power"? (*Standard Oil Co.* v. *State Bd. of Equal., supra,* 6 Cal.2d 557; cf. Code Civ. Proc., § 1068.) We need not decide that question here, for if the writ of review is unavailable, the functions assigned a Court of Appeal by section 1160.8 are within its original jurisdiction over a proceeding "for extraordinary relief in the nature of mandamus" (art. VI, § 10). As we have seen, following *Standard Oil's* exclusion of some agency determinations from the scope of writs of review, those determinations came to be reviewed principally by mandate proceedings in the superior court pursuant to case law and under section 1094.5. ▮ The Constitution, however, grants superior courts no broader extraordinary writ jurisdiction than it grants this court and the Courts of Appeal. (*Santa Cruz Gap T. Co.* v. *S. Clara Co.* (1882) 62 Cal. 40; *Koehn* v. *State Board of Equalization* (1958) 166 Cal.App.2d 109, 118 [332 P.2d 125]; *Loveland* v. *City of Oakland* (1945) 69 Cal.App.2d 399, 405 [159 P.2d 70].) ▮ Though appellate courts often decline for nonconstitutional reasons to assume jurisdiction in extraordinary writ matters deemed more appropriate for the superior court (e.g., *Mexican-American Political Association* v. *Brown* (1973) 8 Cal.3d 733, 734 [106 Cal.Rptr. 12, 505 P.2d 204]; see Cal. Rules of Court, rule 56(a); Fowler, *Mandamus as an Original Proceeding in the California Appellate Courts* (1963) 15 Hastings L.J. 177), a mandate proceeding initiated in an appellate court is a constitutionally permitted vehicle for reviewing an administrative determination (e.g., *McDonough* v. *Goodcell, supra,* 13 Cal.2d 741 (denial of bail bond business permit); *Bd. of Trustees* v. *State Bd. of Equalization* (1934) 1 Cal.2d 784 [37 P.2d 84, 96 A.L.R. 775] (issuance of liquor license)).

▮ Unlike an appeal, a petition for writ of review or mandamus may summarily be denied, without statement of reasons, on the face of the petition and any memorandum opposing it. (*Funeral Dir. Assn.* v. *Bd. of Funeral Dirs.* (1943) 22 Cal.2d 104 [136 P.2d 785]; see Code Civ. Proc., § 1107; Cal. Rules of Court, rule 56.) Yet as shown above section 1160.8's federal counterpart, NLRA sections 10(e) and 10(f), provide review as a matter of right. To construe section 1160.8 as creating an analogous right would put it in conflict with article VI, section 10, unless that section's specification of relief "in the nature of" the extraordinary writs justifies

construing it to encompass a procedure that lacks a basic characteristic of extraordinary writ proceedings.

We do not think that the Legislature intended that result. ■ The command that "[t]he board shall follow applicable precedents of the [NLRA]" (§ 1148) does not extend to procedure rules. (*Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, 412.) Apart from the ALRA virtually all petitions to California courts for review of agency decisions are subject to summary denial. (*Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 727-728 [160 P.2d 816] (mandate); *Gibson* v. *Savings & Loan Commissioner* (1970) 6 Cal.App.3d 269 [85 Cal.Rptr. 799] (review under § 1094.5); *Lavore* v. *Industrial Acc. Com.* (1938) 29 Cal.App.2d 255 [84 P.2d 176]; *City of Union City* v. *Southern Pac. Co.* (1968) 261 Cal.App.2d 277, 279 [67 Cal.Rptr. 816] (review of Public Utilities Commission order).) Section 1160.8 does not command courts to entertain oral argument and write an opinion on every petition but declares simply that the court "shall have jurisdiction" to enforce, modify, or set aside the ALRB order. ■ Because of the prevalent pattern of discretionary review and doubts whether article VI, section 10 authorizes legislatively compelled plenary hearings on petitions for extraordinary relief, we construe section 1160.8 to allow summary denials in the courts' sound discretion.

Courts should not make that disposition, however, until after the petitioner has had reasonable time to file points and authorities in light of the record filed by the ALRB. Ordinarily in writ proceedings the petitioner has the burden of furnishing a sufficient record. (*Dow Chemical Co.* v. *Superior Court* (1969) 2 Cal.App.3d 1, 8, fn. 6 [82 Cal.Rptr. 288]; *Ward* v. *County of Riverside* (1969) 273 Cal.App.2d 353, 358 [78 Cal.Rptr. 46].) By shifting that burden to the ALRB, section 1160.8 impliedly assures the petitioner an opportunity to present written arguments based on the board-certified record.

There remains to be considered the constitutional basis for section 1160.8's allocation of responsibility to the Courts of Appeal to *enforce* board orders that they sustain on review. Under most other arrangements for review by California courts of agency orders the enforcement is left to the agency or a superior court. Article VI, section 10, however, permits appellate courts to exercise original jurisdiction in a proceeding in the nature of mandamus. Mandate may issue "to any inferior tribunal, corporation, board, or person, to compel the performance of an act which

the law specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085.) Compliance with an ALRB order sustained by an appellate court is clearly the performance of an act which the law specially enjoins. Mandate is repeatedly used to compel performance of duties by nongovernmental bodies and by officers of both incorporated and unincorporated associations. Agricultural employers and labor organizations seem indistinguishable. (See *Anton* v. *San Antonio Community Hosp., supra,* 19 Cal.3d 802, 816-817.) ▇ A proceeding under section 1160.8 to compel an employer or a labor organization to perform acts required by an ALRB order thus is a proceeding in the nature of mandamus within the meaning of article VI, section 10 of the Constitution.

▇ If the court summarily denies a petition should it nonetheless have the duty of enforcing the order? Section 1160.8 states that the court "shall have jurisdiction" to decree enforcement. But by summarily denying a petition the court declines to exercise further jurisdiction in the matter. Once the denial becomes final the case must be treated as one in which "the time for review of the order has lapsed," opening the way for the ALRB to seek enforcement by the superior court under the last paragraph of section 1160.8 (see fns. 2 and 8, *ante*).

3. *Are the ALRB findings supported by substantial evidence?*

▇ Tex-Cal challenges the findings that seven employees were laid off in September 1975 because of their UFW membership and sympathies. It is not disputed that they were among a larger number laid off because of a seasonal lull in the harvest. However, several laid-off employees testified that Nina Baltazar, their crew boss, had given UFW affiliation as the reason for selecting the seven. She denied the anti-union discrimination and asserted that the employees were selected because they were "lazy." Resolving the conflict in the employees' favor the board relied on discrepancies in her testimony, on records showing that she had chosen the seven for her work crew on many other occasions, and on evidence that Tex-Cal was engaged in concurrently illegal anti-union conduct including interrogation of and threats to employees and denial of access to union organizers.

Tex-Cal argues that the layoffs were economically justified and included nonmembers as well as UFW members. Yet an apparently

justifiable ground for discharge may in fact be a pretext for unlawful discrimination. (*John Klann Moving & Trucking Co.* v. *N.L.R.B.* (6th Cir. 1969) 411 F.2d 261, 263.) Substantial evidence supports the ALRB findings.

■ It was found that on four successive days, September 30 through October 3, 1975, Tex-Cal forcibly excluded organizers from its property in violation of the access regulation.[9] Tex-Cal contends, and the hearing officer agreed, that the exclusion and arrest of five organizers on September 30 were justified by their violating the access regulation's limitation to two organizers for each work crew plus an additional organizer for every fifteen workers in excess of thirty in a crew. It is unclear whether the five organizers were assigned to only one crew of fifty workers or two crews totaling eighty to one hundred workers. The board concluded that, in any event, Tex-Cal violated the access rule by excluding all five organizers without advising them they were exceeding the numerical limit and giving them a chance to comply. We adopt that interpretation by the ALRB of its own regulation which is entitled to deference.

---

[9]The pertinent language of the regulation then in effect (set out in *Agricultural Labor Relations Board* v. *Superior Court, supra,* 16 Cal.3d 392, 400, fn. 4) is as follows:

"5. Accordingly, the Board will consider the rights of employees under Labor Code Sec. 1152 to include the right of access by union organizers to the premises of an agricultural employer for the purpose of organizing, subject to the following limitations:

"a. Organizers may enter the property of an employer for a total period of 60 minutes before the start of work and 60 minutes after the completion of work to meet and talk with employees in areas in which employees congregate before and after working.

"b. In addition, organizers may enter the employer's property for a total period of one hour during the working day for the purpose of meeting and talking with employees during their lunch period, at such location or locations as the employees eat their lunch. If there is an established lunch break, the one-hour period shall include such lunch break. If there is no established lunch break, the one-hour period may be at any time during the working day.

"c. Access shall be limited to two organizers for each work crew on the property, provided that if there are more than 30 workers in a crew, there may be one additional organizer for every 15 additional workers.

"d. Upon request, organizers shall identify themselves by name and labor organization to the employer or his agent. Organizers shall also wear a badge or other designation of affiliation.

"e. The right of access shall not include conduct disruptive of the employer's property or agricultural operations, including injury to crops or machinery. Speech by itself shall not be considered disruptive conduct. Disruptive conduct by particular organizers shall not be grounds for expelling organizers not engaged in such conduct, nor for preventing future access.

"f. Pending further regulation by the Board, this regulation shall not apply after the results of an election held pursuant to this act have been certified."

██ Tex-Cal states that its ejection of two organizers on October 3, within the hour before work, was proper because they were disrupting operations in violation of the access rule by standing in an intersection where they interfered with passage of vehicles to the work site; and the hearing officer agreed. Finding to the contrary the board relied in part on the absence of evidence that management had mentioned interference with work as its reason for excluding the organizers. Tex-Cal notes the testimony of its president that he told them to "get out of the way," but he also admitted that equipment was able to pass through the intersection and that he asked the organizers to leave because they were "trespassing" on Tex-Cal's "posted" property. There was other evidence that Tex-Cal was attempting to enforce a blanket no-trespassing policy during this period. Thus, substantial evidence supported the findings that removal of the organizers violated the access rule.

Tex-Cal contends that all ejections of organizers were justified by the fact that they were passing out leaflets, whereas the access rule authorized their presence only "to meet and talk with employees." As no objection to their passing out literature was mentioned to the organizers, the ALRB viewed it as a rationalization for otherwise-motivated conduct. Tex-Cal relies on NLRB cases upholding employers' rules against leafleting in work areas. ██ The ALRB properly held, however, that distributing literature is within the activities allowed under the access rule, taking into account the absence in the agricultural setting of alternative channels usually available for communicating with industrial workers. (See *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, 414-417.)

4. *Are the remedies proper?*

The ALRB order (1) restrains Tex-Cal from the unfair labor practices it is found to have committed, (2) requires reinstatement of the illegally laid-off workers and reimbursement for their lost earnings, and (3) sets out a "Notice to Workers" of which English and Spanish versions must be mailed to employees, posted in work areas, and read to employees by a company representative or board agent, giving that agent an opportunity to answer questions. The notice, to be signed by Tex-Cal, tells employees their rights under the ALRA and promises to refrain from committing certain unfair labor practices and to reinstate and reimburse the illegally laid-off workers.

Tex-Cal complains that the reading requirement is unnecessarily embarrassing and humiliating, citing *N.L.R.B.* v. *Laney & Duke Warehouse Co.* (5th Cir. 1966) 369 F.2d 859, 869 and *International Union of Electrical, R. & M. Wkrs.* v. *N.L.R.B.* (D.C. Cir. 1967) 383 F.2d 230, 233. The remedy concededly is appropriate when a substantial part of the work force is illiterate. (*N.L.R.B.* v. *Bush Hog, Inc.* (5th Cir. 1968) 405 F.2d 755, 758-759.) Tex-Cal argues there was no evidence of illiteracy in this case. The ALRB properly relied, though, on its knowledge from past hearings of significant illiteracy and semi-literacy among farmworkers. (See *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, 415.)

Tex-Cal finally contends that the requirement of mailing the notice is inappropriate. The ALRB may have considered it necessary to give workers an opportunity to read the notice privately, outside the intimidating presence of management. The remedy was within its discretion. (*N.L.R.B.* v. *H. W. Elson Bottling Co.* (6th Cir. 1967) 379 F.2d 223, 226.)

On the recommendation of the ALRB its order is modified in these respects:

1. In paragraph 2(a), Ofelia Diaz and Linda Perez are deleted from the list of employees to be offered reinstatement as each already has received an offer.

2. Compliance with paragraph 2(d), concerning issuance of the notice to employees, is required only during the first year following the effective date of this court's opinion.

3. References in paragraph 2(a), on reinstatement, and paragraph 2(e), on the reading of the notice, to the "1977" season are changed to the "1979" season.

Let a decree issue enforcing the order as modified.

Mosk, J., and Manuel, J., concurred.

Tobriner, Acting C. J., concurred in the judgment.

Richardson, J., and Taylor, J.,* concurred in the result.

---

*Assigned by the Acting Chairperson of the Judicial Council.

**CLARK, J.,** Concurring and Dissenting.—Requesting the sheriff to enforce the law by arresting those engaged in criminal conduct does not constitute an unlawful labor practice by an employer.

In *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 419 et seq. [128 Cal.Rptr. 183, 546 P.2d 687], the majority of this court held that the board's access rule was an exception to the criminal trespass statute (Pen. Code, § 602), and that conduct violating the criminal trespass statute but authorized by the access rule was lawful. However, we did not hold that union organizers engaging in conduct in violation of *both* the trespass statute and the access rule are immune from arrest. They are not above the law—until today's decision.

Today's decision upholds the board's determination that the employer committed an unlawful labor practice by simply seeking arrest of organizers violating both the access rule and the criminal trespass statute. (*Ante,* pp. 353-354.) The majority reach this conclusion claiming that ALRB access regulations may properly be interpreted to require warning criminal trespassers before arrest, but I can find no language in the regulation allowing such interpretation.

Imposing administrative penalties on victims of criminal acts for merely asking the sheriff to perform his duty is ludicrous, bringing the law and this court into question. This approach suggests we free the burglar or rapist and rather jail his victim who reports the crime to the police.

With the foregoing exceptions, I concur in the conclusions reached by the majority opinion.